We'll move to the next case of the day, Daniel Sarauer against the International Association of Machinists and others, appeal number 19-3142. Mr. Gilliam, can you hear me? Yes, sir. And Mr. Carillo, can you hear me? Yes, I can. All right, terrific. Mr. Gilliam, the floor is yours. Good morning, Your Honors, and may it please the court. The Employees' Appeal asks this court to reverse the District Court's denial of their motion to remand and to send this case back to Wisconsin State Court where it was originally filed and where it always belonged. I'll begin by first discussing why Wisconsin State Courts have jurisdiction over the employees' right to work claims and then turn to State Court jurisdiction over their wage claims. And I'll conclude by addressing certification of state law questions and the merits. Turning first to the first jurisdictional issue, the District Court should have granted the employees' motion to remand because their claims arise under the Wisconsin Right to Work Law. And Wisconsin has authority under Section 14B of the National Labor Relations Act to interpret and enforce its right to work law, all in accordance with the U.S. Supreme Court's in Shermerhorn 1 and 2 in Algoma Plywood. Rights under right to work laws are state-conferred rights. The employees here are enforcing their rights under the Wisconsin Right to Work Law to refrain from paying union fees as a condition of employment. And indeed, the Employers and Unions 2015 CBA contained a union security agreement that required the employees to pay union fees as a condition of employment. Counsel, let me ask you a question about whether this belongs in state or federal court, whether it should have been remanded. Obviously, Wisconsin's wage statute, you know, which permits its right to work statute, permits this. I mean, obviously, the question is the effective date of this CBA. And that strikes me as a federal question. I mean, they're not protesting the employer's refusal to enforce it. Let's say that it became effective on April 1st. So this case seems to me very similar to Grable and Sons, where it's a state law cause of action that turns on a question of federal law. Why am I not thinking about that in the right way? Well, Your Honor, I think the district court mistakenly decided that determining when Wisconsin's right to work law first applies depends on an issue of CBA formation. But the key provision here that addresses when the right to work law first applies, which is Wisconsin 13-1, says that the law first applies when a CBA containing provisions inconsistent with the act, that means union security agreements, applies when the agreement is renewed, modified, and extended. It doesn't use the terms effective date, and it doesn't use the terms CBA formation. And by assuming that that state statutory provision means formation, or if it had said effective date, it's really invading the province of the state under Section 14b to say what the right to work law means. But what does renewed, modified, or extended mean if it doesn't mean the date on which that agreement was renewed, modified, or extended? Well, Your Honor, the state court could basically take several paths in deciding what that means. It could follow Wisconsin state decisions establishing that rights and obligations accrue upon the collective bargaining agreements execution, as the Wisconsin Court of from very well-established National Labor Relations Board precedent, holding that union security agreements are invalid until executed. The key to interpreting the provision and what renewed, modified, and extended mean is to recognize that we're talking about state public policy issues of retroactivity here. And really what you're determining with renewed, modified, and extended is when rights and obligations accrue. Are you arguing that Wisconsin could exercise its power to outlaw the term of an existing collective bargaining agreement governed by the NLRA? No, Your Honor. I'm not arguing that, and I think that would be impermissible, and the state would be exceeding its power. Why? It would be impermissible. Counsel, why would that be impermissible? Because the state would be exceeding its power under 14B. It has the authority under 14B. Would you agree that that is a question of federal law? I think that if a state was trying to regulate CBA formation or prescribe requirements for CBA formation, I think that that would be an issue of federal law. But we're not in that zone here. That's not what Wisconsin is doing. It more sounds like you are to me. Well, no, Your Honor. What Wisconsin is doing in Section 13-1 is merely stating a rule for when its right-to-work law first applies. It can't bind anyone to certain formalities with respect to when their CBAs are formed. All it's doing is saying when its right-to-work law first applies to a union security agreement. But counsel, I think that Mr. Hamilton is pointing out that unless Wisconsin has the right-to-work law, it can't apply any later than the date that the contract was formed, because then at that point, it's an existing contract. So again, it seems to fold back into the federal law question of when the CBA was formed. Well, Your Honor, what the Supreme Court recognized in Shermerhorn and Algoma Plywood is that Congress reserved for states under 14B any and all power to restrict the execution and enforcement of union security agreements. We're not concerned here with any other provision of the CBA apart from the union security agreement. So when the employer and the union reach a meeting of the minds as to other terms and provisions, it is irrelevant to enforcing employees' rights with respect to the union security clause. So you think that's separate, that it was formed separately, there was a later meeting of the minds? Is that your theory? Well, no, Your Honor. I think that we don't really care when the CBA itself was formed. What we care about is the union security agreement. When did that become valid and enforceable? And the answer to that question lies within Wisconsin state law and Wisconsin's ability I thought you just told me it was a federal question. Well, Your Honor, there is well-established precedent under the National Labor Relations Act that deals with retroactivity. And those cases basically say that you can't apply a union security agreement to employees, you can't impose it on employees until that union security agreement is executed. And the employer and the union have no reliance interests, no enforceable rights as to that union security agreement in the CBA until it is executed. That's why the district court was mistaken to focus on CBA formation because we're just simply not in that broad realm. Is it correct that the Wisconsin statute is frayed in terms of agreements? Well, Your Honor, what it says is a collective bargaining agreement containing provisions inconsistent with the act. And that means that we're talking about a CBA containing a union security agreement that violates the right to work law. But the statute itself pins it to the date that the agreement was renewed, modified, or extended, not to the date that any particular provision within that agreement was modified, renewed, or extended. Yes, Your Honor. I would submit that Wisconsin 13-1 is what the reason why its focus is on union security agreements is that is the power that states have under 14b. Unquestionably, but the problem here is the date. Yeah, so going forward, it's clear that Wisconsin has exercised its power under Section 14b. The problem is that this CBA was formed before that statute became effective. Yes. So if the CBA was formed before March 11th, the right to work effective date, it contained a union security agreement. However, there were no rights and obligations that had accrued with respect to the union security agreement until after the March 11th effective date. It occurred when the CBA containing that clause was executed on March 18th. And we're dealing with Wisconsin 13-1, which is a retroactivity provision. And the concerns we have in any sort of retroactivity provision is when everybody's obligations accrue. And here, no rights and obligations accrue simply because an employer and a union agree that they're going to include a union security agreement. The labor law recognizes that employees are entitled to certainty and certain standards of notice. They have to be unmistakably and clearly informed of the existence of a union security agreement and their duties and obligations under a union security agreement. Therefore, they can't be charged any union security fees until it's executed. And that's why the district court erred is that you can't just focus broadly on CBA formation. You have to look and see when that union security agreement contained in the CBA was actually executed and enforceable as to the employees. What's the clarity you have for that specific point, that the union security agreement or clause would not go into effect until executed when the rest of the agreement is in place? The union could not lawfully demand payment of dues or union fees for the month prior to execution. So what that means is the union had no valid interest in enforcing and collecting those It had to wait till execution. And the reason for that is because employees who are going to be subjected and have the most to lose and suffer drastic consequences under a union security agreement, they have to be able to inspect and see the union security agreement. And that's what the right to work law is doing. It's protecting those non-member employees who are going to be subjected to the compulsory requirements of the union security agreement. Where are those in your briefs? Maybe I'm overlooking them. Your honor, there, I believe we cite them in both the appellant's brief and the reply brief. But if you look to page 29 of our principal brief, our opening brief, I'm sorry, it's page 31. And it's the International Chemical Workers Union case is the American cyanamide case that I referenced. And now I'm with you. These names get long and unwieldy at times. But yes, your honor, those are those cases. And that's what we believe the district court missed. Mr. Gary, what would happen if this is sent back to the state court? What would be next if this execution date is somehow overcome and it goes back to the state court? What would you expect to happen then? Well, the state court would basically be able to review state public policy issues on retroactivity, which have been addressed in Wisconsin cases. And it could follow the Wisconsin decisions establishing that rights and obligations accrue only when the CBA addressing union security clauses executed, or it could. And of course, our argument is that it should borrow from NLRB precedent, holding that union security agreements are invalid and until executed. And I'd like to know that states are perfectly free to borrow from federal law to construe the meaning in their own state statutory provisions. And they do it all the time without creating federal jurisdiction. The Supreme Court said in Grebel that even the mere need to apply federal law isn't sufficient to open up the rising underdoor. And here, it's really the state's decision for how to interpret that 13 one rule on when a the state right to work law first applies. The federal court didn't have authority to expound on 13 one, or to decide when Wisconsin intended its restrictions on union security agreements to first apply. It's been well settled law for nearly 60 years, that Congress gave the state any and all power to restrict the execution enforcement of union security agreements. And that must include the authority to say when the restriction on union security agreements first applies. But I would also like to say, let's say that you believe that this is tied to to CBA formation, and there is a federal issue. We think there's not one minute, but you've got one minute left before your rebuttal time starts. Thank you, Your Honor, but a federal court can still take jurisdiction over a state law claim. Well, I'm sorry, the federal court can't take jurisdiction over the state law claim where it interferes with congressional judgment about the division of labor between state and federal courts. And here, the district court's decision to interpret and apply a state right to work law defies that authority. Schermerhorn recognized that basically states that federal – the federal courts can't interfere with state laws in the field. And if the federal court was correct, it would sweep right to work enforcement actions into federal court. I'd also like to say a brief word about the wage claims. The district court should have also remanded the employees' motion to remand their wage claims. The only reason the district court denied the employees' motion to remand was because it believed the court must interpret the CBA to determine when wage payments were due. That was an error because there was never a dispute as to when wage payments were due. What do you make of our decision then and actually against Heritage Cable vision? As to the wage claims, Your Honor? Yes, as to whether there's exclusive federal jurisdiction in essence field preemption for such claims when there's a CBA? Yes, Your Honor. That case is very narrow because there, what the court had to do was in order to determine the amount, the timing, and the method of paying wages, it had to interpret a very specific provision in the collective bargaining agreement that it was a wage bonus and increase provision that gave instructions on how to do all of those things. Here, there's no dispute as to the amount owed or to the employee's entitlement to the wages claimed and there's no need to interpret any provision of the collective bargaining agreement in order to resolve the wage claims. The simple matter is that the employer failed to pay the employees their wages and there's no union dues checkoff authorization in this case. What should we make of the fact that these plaintiffs had already pursued those claims and then settled them as unfair labor practices and with no damages since they only paid what, since in essence the money wound up where it should have been? As a general matter, Your Honor, the NLRB proceedings are investigative and not adjudicative, particularly in these circumstances where no complaint was issued. But basically, those unfair labor practice charges involved the employee's attempt to make sure that if they had signed a checkoff authorization, which they hadn't, but if they had signed one, that it was revoked, which they could only do in the federal venue. The other part to that is that they had basically demanded from the employer and the union to produce any sort of checkoff that you do have for us because you say we signed them, we don't think we did. That was the other purpose of their unfair labor practice charges. So it really, it had nothing to do with this separate and independent state law wage claim for the failure to pay wages. Counsel, has that Wisconsin wage law ever been used to try to collect withheld union dues? No, Your Honor, and it's not surprising, the reason being is that until recently, Wisconsin was not a right to work state. So many employees are basically going to rely on the convenience of the checkoff authorization. And I think that if there was a, excuse me, you have one minute left in your total time. Okay, well, if I don't know if you'd like me to finish my answer, well, if you're done, go ahead. Sorry, go ahead and finish the answer. Um, well, yeah, my point was just going to be that, um, the, there's no checkoff involved in this case. So, um, there's, there's no federal interest. It's not surprising that, um, that we haven't seen a case where, uh, because now we can, we have a situation where people don't need that convenience anymore. All right. Thank you, Mr. Gillian. I'll give you one minute for rebuttal. Mr. Perillo. Um, good morning. May it please the court. My name is Fred Perillo. I represent both the employer Maysteel and the two unions, um, that are involved in this matter. Um, I, out of an excess of caution, I'm going to ask if the court can hear me. Yes, I can hear you. I can hear. Thank you. Um, the time of COVID, I thought it would be prudent to ask, um, before I begin discussing these cases, I want to correct, um, two errors, I believe, uh, that came up in, in one is that 14 B does not actually grant any powers to states. Um, section 14 B says that the national labor relations act will not be construed as permitting a union shop where states have outlawed it. That's a rather different thing, uh, because nothing in that, uh, provision implies that states have gotten back plenary authority over how CBAs are formed, collective bargaining agreements rather are formed, uh, and what the timing or method of such formation would be. It's a very simple provision that says states can still outlaw the union shop. It does not extend to states powers to interpret rules on collective bargaining, which remain the exclusive purview of the federal courts under section 301 or the NLRB, uh, under that, under their statute, the NLRA. The other error that I wanted to correct, uh, is the claim that union shop clauses must be executed to be effective. Uh, the national labor relations board held as long ago as 1969 in the Pacific iron case, which is cited in brief, uh, that union shop clauses need not be executed or even need be in writing. Uh, that case said union security provision is a part of the contract and need not be in writing. That's still the law today. The tech weld and American cyanamide cases merely state that union shop clauses can't be applied retroactively, uh, a, a proposition with which we have no quarrel and which is not relevant to this case. The collective bargaining agreement in this case was ratified on February 28th, um, which is 11 days before the right to work law became effective. It went into effect on March 2nd, which is nine days before the right to work law became effective. The only thing that happened after the date of the right to work law is the formality of the parties getting together to have a signing ceremony. I'd like to turn first to the claim by plaintiffs that they were somehow bushwhacked or, or ambushed by the judge inserting an issue of contract formation into this case. Uh, if we look at the complaint, the complaint was filed under Wisconsin's version of the uniform declaratory judgment act. Uh, and it, uh, it's a long complaint. It's got 79 paragraphs. Um, it has 15 lettered requests for relief, four of which seek a declaratory judgment that the, uh, CBA is a quote March 18th CBA. In other words, seek a declaratory judgment about the formation date of the contract. And three of the lettered requests for relief seek reformation of the contract. The complaint itself has 12 paragraphs, which discuss the formation date of the agreement. And it specifically alleges that the, uh, my clients, the union and the employer backdated the agreement to circumvent the right to work law. In fact, that's the only dispute between the parties under council one and two of the agreement. No one disputes that there is a union shop clause there. No one disputes that it would violate the right to work law. If the right to work law applied to it, the only dispute between the parties on council one and two is the formation date. And that was clearly pleaded by the plaintiffs as an essential part of their cause of union shop clause. There's 301 jurisdiction, obviously to seek reformation of a contract. The formation of the contract is exclusively an issue of federal law under well-established and long established principles, which are neatly summarized by this court in the Gustafson decision concerning how labor agreements are formed and the fact that there is no need for a writing or an execution. Because the plaintiffs pleaded their action the way they did, it was both clearly subject to federal law and plainly removable. The third so-called count, I mean, I realized that under notice pleading there are no longer such things as counts. The federal rule is only requiring a short and simple statement of the facts, but plaintiffs have designated the latter half of their complaint as a, quote, third count concerning unlawful deductions. Judge Jones correctly realized that that cause of action, again, using plaintiff's term, had to be preempted under the Garmon doctrine. If for no other reason that Garmon says that the National Labor Relations Board has primary jurisdiction over things that are arguably prohibited, and the plaintiffs themselves brought two rounds of NLRB charges, one to get copies of their signed authorizations, and the second when they discovered that the union had lost several of the signed authorizations to revoke them and claim that the deductions, rather, their pay were not authorized. Did the unions refuse informal requests to just produce them? So the plaintiffs had to go to the NLRB for that? I wasn't the attorney who represented the union in the NLRB cases, but my belief is that those cases when filed were settled on the grounds that the union would, or on the basis, rather, that the union would no longer seek deductions for anyone where they couldn't currently find a signed authorization. Contrary to what's stated by the plaintiffs, it was never agreed, and I don't think was ever found as a fact by Judge Jones, that there had never been authorizations. It's only that for, of the ten plaintiffs... My question, my question is just, it seems, I realize there's a lot of friction and hostility here, but the idea that you'd have to go to the NLRB just to ask to see a copy of the document that you had signed that authorized those deductions seems rather extraordinary. I don't actually know the answer to that question, Your Honor, but for purposes of the legal decisions in the two decisions being appealed today, let's assume that that did happen, that the union was prickly and refused to produce them until charges were filed. What ultimately transpired was that the union was unable to find six of the ten. For those people, the deductions were stopped. During the litigation, the union later found one of the six that it couldn't find. That individual, who was Mr. Bartsch, actually changed his testimony three times, first saying under oath that he had signed one, then saying under oath that he hadn't, and then when it was found, changing back to say that he had signed one. I don't make anything out of his shifting testimony, but it does clearly show that the third count of the complaint was in fact removable. For no other reason than Mr. Bartsch alleged that he had no signed authorization, which would have made the deductions unlawful and also a violation of the labor agreement, and the union was able to actually produce that authorization. That means that that claim could have been filed under section 301 as a duty of fair representation claim. The members could have said, you breached the contract, you the employer breached the contract by taking money out of my pay when there was no authorization for it, and the union should have assisted us. So that's a classic removable 301 cause of action that completely preempts state law on that issue. That would have provided the basis for removal, actually also provided a basis for removal. Judge Jones was, and we would not have gotten summary judgment on that because of the factual dispute over who had signed an authorization or not. Judge Jones correctly was able to dismiss that portion of the complaint on Garmin preemption because claiming, when you file NLRB charges over an issue, that by definition means it's arguably prohibited under the NLRA. I don't think that there's any serious argument that Judge Jones was incorrect about his decision that providing an additional remedy under chapter 109 would violate the Supreme Court's decision in Gould, which specifically says states cannot provide enhancements to remedies under the National Labor Relations Act. I want to turn to the defenses that were raised by the plaintiffs in this case. One of their defenses is that there is the Appalachian shale rule, or Appalachian shale, which requires that the NLRB will not allow election petitions to go forward unless a labor agreement is signed. I think this conflates the issue of what forms a collective bargaining agreement versus the prudential rule by the NLRB that it will only entertain election petitions if there's no signed agreement. Obviously, the NLRB could not, by its own prudential rule on elections, alter whether or not a collective bargaining agreement was formed and for how long it would be effective. The other defense raised by the plaintiffs is the claim that the union shop itself must be signed. I've already addressed that under the Pacific iron rule. I think it's important to note that if Wisconsin attempted, for example, to write into its statute of frauds that labor agreements could not go into effect unless and until they were formally executed, which Wisconsin has not done, that would clearly be preempted by the NLRA. Plaintiffs here are trying to do the same thing in their first two counts of the complaint by saying that the right to work law, which does not mention signing or execution, it only mentions renewal, modification, or extension, means that labor agreements can't be considered to be renewed, modified, or extended unless and until they are signed. Field preemption or so-called complete preemption clearly takes away the power of Wisconsin to do so and provided the basis both for removal in this case and also for the rule of decision in our favor. I think Judge Jones was clearly correct in that regard. Unless the court has questions, I would yield the rest of my time. I don't hear any further questions. Let's see. Thank you, Mr. Gilliam. You have one extra minute for rebuttal. Thank you, Your Honor. Just to first address the question you posed to Mr. Perillo, yes, the employees had to go to the National Labor Relations Board because both the employer and the union were unresponsive to their request to give them any sort of evidence of any dues deduction authorization they believed they had signed. The record is clear, and even the district court recognized that there are no union dues check-offs that exist. Also, I'd like to address Mr. Perillo's point about the National Labor Relations Board precedent recognizing oral union security agreements. And it's true. You can have oral union security agreements. However, they must satisfy very stringent standards to be valid and enforceable that are akin to the execution requirement. And that didn't happen here. We cite the case Pacific Ironworks, and that case involved a union who met with all 12 employees in the bargaining unit and specifically informed them in clear and unmistakable terms of their rights and obligations with respect to the union security agreement. That didn't happen here. In fact, when employees and Zastro, right around the time... Excuse me, counsel, would you agree that that's a question of federal law? Which question? The validity of the union security agreement and whether the execution is required under the circumstances. No, Your Honor, it's a matter of state statutory interpretation. And just to reinforce the point, the U.S. Supreme Court has held in its well-settled law for over 60 years in Schermerhorn that the Supreme Court recognized that Congress reserved any and all power for the states to restrict the execution and enforcement of union security agreements. Okay. Thank you. You're well over the time. Final word? No, Your Honor, I don't. Okay. Thanks to both counsel. Again, especially under these circumstances and your patience with the court, the case is taken under advisement.